DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant, James William Purley, guilty of two counts of aggravated burglary, two counts of aggravated robbery and two counts of kidnapping. The jury also concluded that appellant had used a gun during the commission of each of those offenses. From that judgment, Purley asserts the following as error on appeal:
 {¶ 2} "First Assignment of Error
 {¶ 3} "Defendant-appellant's conviction [sic] are not supported by sufficient evidence and are therefore a denial of due process.
 {¶ 4} "Second Assignment of Error
 {¶ 5} "Defendant-appellant's conviction is against the manifest weight of the evidence."
 {¶ 6} On April 10, 2000, the Lucas County Grand Jury indicted appellant on two counts of aggravated burglary, two counts of aggravated robbery and two counts of kidnapping, all with gun specifications, in connection with the break-ins of two Lucas County residences on July 4, 1999 and November 28, 1999[1]. The case proceeded to trial on May 1, 2001 at which the following evidence was presented.
 {¶ 7} On July 4, 1999 at approximately 2:45 a.m., Hassen Abdoney arrived at his home on Ann Marie Court in Oregon, Ohio, after closing his business, Wolff's Gardens Bar, for the night. Hassen parked his car in the garage and began to exit the car when he was accosted by two masked men who had entered his garage. The men were brandishing guns and demanded money. Hassen handed the men approximately $800 that he had in his pocket but as he exited his car, one of the men hit him across the head with a gun. Hassen testified that one of the men warned him not to look at the gunmen or he would "blow your head off." The assailants then demanded that Hassen open the door to his house, which he did. After they entered the house, one of the assailants led Hassen into the dining room, demanded that he lay down on the floor and placed a table on his head.
 {¶ 8} Meanwhile, Hassen's wife Azeze, who had been asleep, was awakened by the noise downstairs and walked out into the second floor hall to investigate. At that same time, one of the intruders approached Azeze and demanded money. Azeze then removed approximately $1,500 from behind the dishwasher and told the intruders that there was more money in a locked drawer in a first floor room. Azeze attempted to open the drawer with a knife but was unsuccessful. The intruders then brought Hassen into the room and demanded that he open the drawer with his key. Hassen complied, and the intruders retrieved approximately $30,000 in cash from the drawer. The intruders then tied Hassen and Azeze Abdoney up with duct tape and used Hassen's keys to abscond with his car. The car was later found a short distance from the Abdoneys' home with the keys in it and the engine running. Both Hassen and Azeze testified that they could not identify the intruders because they wore masks and gloves, but Azeze stated that the man who met her on the second floor was white and that the man who stayed with Hassen was black. After an investigation, no suspects were identified and the case was considered "dead."
 {¶ 9} On November 28, 1999, at around midnight Ken and Mary Sawers were in their home on Rio Street in Toledo, Ohio when they heard a noise at the back door. The couple went to the door to investigate. The door jamb appeared to be broken so Ken locked the storm door and the couple went to bed. At approximately 3:00 a.m., Ken and Mary were awakened in their bed by two masked intruders. The intruders were standing on each side of the bed brandishing guns and demanding money. They then led the Sawers out of the bedroom and downstairs to an office while at the same time demanding that the Sawers not look at them. Ken testified that one of the intruders threatened to "blow" his head off if he did not show them where the money was. The Sawers had several hundred dollars in cash and $800 in travelers checks in an
 {¶ 10} envelope, which the intruders took. The intruders then had the couple lie face down on the floor and tied their hands behind their backs using duct tape. Again, the intruders demanded money. One of the intruders then took Ken upstairs to look for more money while the other intruder stayed with Mary. Subsequently, the men took Mary upstairs and laid both Mary and Ken down on a bed. They then left. Within about ten minutes, Mary was able to loosen and remove the duct tape from her wrists. She could not free Ken, so the couple went downstairs to find scissors when the intruders returned. In the envelope that contained the cash and travelers checks, the intruders discovered the combination to a safe and demanded that the Sawers show them the safe. Finding nothing in the safe, the intruders left. As with the break-in of the Abdoneys' home, a subsequent investigation revealed no suspects and the case was considered "dead."
 {¶ 11} On January 7, 2000, Lonnie Ebersole was pulled over for speeding. A search of his car revealed marijuana, a handgun, a ledger book and travelers checks. The travelers checks were in the names of Ken and Mary Sawers. Initially, Ebersole said that he had bought them from a man in a parking lot. After he had been jailed, however, he decided to confess his involvement in the break-ins. Ebersole was the state's main witness at the trial below. He testified to his involvement in the July 4, 1999 and November 28, 1999 break-ins and implicated appellant as his co-conspirator. Ebersole's testimony matched that of the victims in describing the offenses. Ebersole did admit, however, that he was only charged with misdemeanor offenses for his participation in the crimes and as of the time of the trial had only served 30 days local time for the break-in at the Sawers. He further testified that he might be looking at 120 days in jail for the break-in at the Abdoneys. Nevertheless, on cross-examination, Ebersole admitted that he could have been charged with the same offenses that appellant was charged with had he not agreed to testify. Ebersole further understood that had he been charged as appellant he could have faced a maximum of 60 years in prison on the charges and 18 years on the gun specifications. Upon further cross-examination, Ebersole admitted lying to the police after an incident in which he blew the transmission on his father's car. Ebersole testified, however, that it had been appellant's idea to tell the police that the car had been car jacked and damaged.
 {¶ 12} Appellant's fiance, Rashonda Pritchett, testified in appellant's defense. Pritchett stated that during the summer and fall of 1999, she was pregnant with appellant's child and had been having a difficult pregnancy. She testified that on July 3, 1999, she had been having contractions and needed constant assistance from appellant. Pritchett testified that she was living with her cousin but that appellant stayed with her for the entire night of July 3 and morning of July 4. Because of the contractions, she stated that she could not sleep and that appellant never left her side. She remembered the date because she could not do anything for the July 4th holiday. When questioned as to why she did not come forward with the alibi sooner, Pritchett stated that she had discussed it with appellant's parents and they agreed to first talk to appellant's attorney. Similarly, Pritchett testified that in November 1999, she was again having contractions and needed constant assistance from appellant. She subsequently gave birth to a baby girl on November 30, 1999, approximately three weeks before her due date. Pritchett was not, however, able to relay what she was doing or where appellant was at any other time during her pregnancy except to say that appellant did not work at all the week of July 4, 1999.
 {¶ 13} At the conclusion of the trial, the jury returned guilty verdicts on all of the offenses charged and concluded that appellant had used a gun during the commission of those offenses. The court subsequently sentenced him on all of the offenses and attendant gun specifications. Appellant now brings this appeal from those convictions.
 {¶ 14} Appellant's assignments of error are interrelated and will be discussed together. Appellant asserts that there was insufficient evidence to support his convictions and that the convictions were against the manifest weight of the evidence because the state's sole witness, Lonnie Ebersole, had an incentive to lie to implicate appellant and therefore was not credible.
 {¶ 15} The Supreme Court of Ohio has ruled that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. However, under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Since appellant's assignments of error encompass both sufficiency and manifest weight issues, we must apply both standards.
 {¶ 16} Appellant was convicted of two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), two counts of aggravated burglary in violation of R.C. 2911.11(A)(1) and two counts of kidnapping in violation of R.C. 2905.01(A)(2).
 {¶ 17} The aggravated robbery statute reads in relevant part: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" The relevant portion of the aggravated burglary statute reads: "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another." Finally, the kidnapping statute provides: "(A) No person, by force, threat, or deception, or in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) To facilitate the commission of any felony or flight thereafter[.]"
 {¶ 18} Upon a review of the evidence presented in the trial below, and in light of the applicable standards, we conclude that the verdicts were supported by sufficient evidence and were not against the manifest weight of the evidence. The victims of these offenses testified at the trial below as to each of the elements of the offenses. Lonnie Ebersole, the state's key witness, and an admitted co-conspirator, testified that he and appellant committed these crimes. Appellant asserts that Ebersole was not credible and that absent Ebersole's testimony, there is no evidence that appellant was involved in any of these crimes. Questions regarding the credibility of witnesses are matters left to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The jury was presented with Ebersole's version of the events and with appellant's alibi through the testimony of Rashonda Pritchette. Moreover, the court instructed the jury that "[t]estimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution." Nevertheless, the jury chose to believe Ebersole. We cannot say that the jury clearly lost its way in resolving this conflict in the evidence. The first and second assignments of error are not well-taken.
 {¶ 19} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Knepper and Pietrykowski, JJ., concur.
James R. Sherck, J., dissents.
[1] The indictment also charged appellant with aggravated robbery and kidnapping in connection with the August 15, 1998 robbery of a T.G.I. Friday's restaurant. Those charges were severed from the charges at issue in this case and in a separate trial appellant was tried for those offenses.